† ALLARD *versus* CITY OF BELFAST.

The plaintiff gave defendants a bond, in which was recited a contract, wherein plaintiff agreed to keep amended and repaired, agreeably to c. 25, R. S., certain roads, &c., as laid out on a plan in the city of Belfast, for the term of four years, together with all new highways which might, within the time, be built by defendants, at and for the sum of $2250, for each and every year, to be paid in equal quarterly payments ; and the bond further stipulated that if plaintiff should perform said contract as defendants were bound to do by law for the time specified, and to the acceptance of the road commissioners for the time being, and to their satisfaction and approval, and should save the defendants harmless from and against all claims for damages and costs arising from any obstruction or want of repair of any of the roads or bridges therein, then the bond to be void ; otherwise, to remain in full force : — the bond further provided that if plaintiff should at any time fail to perform his contract to the satisfaction, approval and accceptance of the commissioners, it should be in their power and at their option to put an end to said contract by giving plaintiff written notice of their decision, and allowing him *pro rata* pay, as above, to the time of said notice, and saving to defendants all rights and remedies by virtue of the condition of the bond : —

The commissioners would not approve of the plaintiff's alleged performance of his contract for one year of its continuance, and defendants refused to pay him for that time. In an action to recover for such quarterly payments, and for extra repairs on new *roads*, not properly completed, *it was held* : —

1. That the mutual stipulations in this contract were *independent* ; —

2. That for any failure on the part of plaintiff to comply with his contract the defendants' remedy was upon his bond ; —

3. That for new roads not properly constructed, but which *were accepted* by the selectmen, the plaintiff was entitled to no extra allowance.

ON REPORT from *Nisi Prius*, TENNEY, J., presiding.
ASSUMPSIT.

The writ contained three counts. First, on an account annexed for a balance of $2469,67. Second, upon a contract for the same sum. Third, upon a *quantum meruit.*

The road commissioners of Belfast contracted with plaintiff, on May 1, 1849, to keep in repair all the highways of that town for the term of five years, excepting the village district, and he gave a bond with surety for the faithful performance of his contract. On May 1, 1850, the plaintiff's surety having moved away, a new bond was given, in the sum of $5000, containing these conditions : —

" That whereas the said inhabitants did, on the first day

of May, now last past, by their road commissioners duly
chosen, make a contract with said Isaac Allard to keep open,
in repair and amended, as required in and by c. 25, of R. S.,
for the term of five years from said first day of May, all
the highways, town ways, causeways and bridges as laid down
in a plan of said roads and made by B. P. Hazeltine, and
deposited with said commissioners, to which reference may
be had in explanation of the highways, &c., referred to in
said contract, together with all the new highways, town ways,
causeways and bridges which may hereafter be made within
said five years by said inhabitants, at and for the sum of
two thousand two hundred and fifty dollars for each and
every year, to be paid in equal quarterly payments of five
hundred and sixty-two dollars and fifty cents each, it being
agreed that said Allard is not to build anew any bridge
which, within said five years, may be accidentally destroyed
by flood or fire, and it being also agreed that the village
destrict be excluded from the operation of said contract,
(village district defined.)    Now if the said Allard shall well
and truly perform his said contract, and faithfully keep
open, repaired and amended all the highways, town ways and
causeways and bridges, except as aforesaid, which said in-
habitants are by law bound to do within the bounds of said
town for the term of four years, from the first day of May
next, according to the true intent and meaning of the law
aforesaid, and the contract made as aforesaid by and be-
tween the parties aforesaid, and to the acceptance of the
road commissioners for the time being, and to their satisfac-
tion and approval, and shall save and hold harmless said
inhabitants and indemnified from and against all claims of
every name and description for damages and for costs aris-
ing from any defect, obstruction or want of repair of any
of the roads or bridges as before described, or for the
omission of any duty required or enjoined by the law of
or upon surveyors of highways, all powers of which said
Allard may exercise in the execution of said contract, then

Allard *v.* Belfast.

this obligation shall be void; otherwise, to remain in full force."

"It being moreover understood and agreed that if said Allard shall at any time fail to perform his aforesaid contract to the satisfaction, approval and acceptance of the commissioners as aforesaid, it shall be in their power and at their option to put an end to said contract by giving said Allard written notice of such their decision, and allowing him *pro rata* pay as above, to the time of said notice, and saving to the said inhabitants all rights and remedies which may have accrued or which may hereafter accrue to them by virtue of the condition of this obligation."

Copies of the records of the town meeting when the commissioners were chosen were in the case, but all the evidence on either side was admitted subject to all legal objections.

For the first three years of the contract, the plaintiff received his contract price on the approval of the commissioners.

For the fourth year, the commissioners refused to certify their approval, and at the end of each quarter the plaintiff demanded his pay without effect.

The last year's contract price was paid.

At the Oct. term, 1852, an indictment was found against the town of Belfast for the bad condition of its roads. A default was entered at the succeeding May term, and a fine assessed.

The roads were subsequently repaired by plaintiff.

The report of the commissioners, at the March meeting, 1853, alleged that the plaintiff had expended but a very small sum on the roads for the year previous, and justified their withholding his pay for a non-fulfilment of his contract.

Upon the condition of the town ways, between May, 1852, and May, 1853, much evidence was introduced, by both plaintiff and defendants; the plaintiff's evidence tending to show that the ways were well enough until his supplies were

stopped, and the evidence of defendants tending to show the contrary.

It appeared, that the town had not been subjected to any expense on account of any defects in their ways, since this contract was made, and that the subsequent contractor to take charge of them, had taken them at $250 less than the sum given to plaintiff.

During the continuance of this contract, two new roads were made, called the "Job White" road and the "Blackstone" road.

The plaintiff claimed, that these roads were not properly made, and that in consequence thereof, the expenses of repairs upon them were much enhanced, and evidence was by him submitted to support his claim; but it appeared they were accepted by the selectmen.

Upon the evidence admissible, the Court were authorized to draw inferences as a jury might, and render judgment by nonsuit or default as the law of the case required. If a default should be entered, the Court to make up judgment upon the evidence reported.

*Dickerson,* for defendants, objected to the sufficiency of the evidence to show that the commissioners were legally chosen; but if they were and the contract was valid, then, that the repairs were to be made to the acceptance of that board. Both parties made them the judges; and before plaintiff can recover, he must have their approval of his doings. Having failed to do this, he cannot recover. *Johnson* v. *Reed,* 9 Mass. 78; *Drury* v. *Fay,* 14 Pick. 326; *North Yarmouth* v. *Cumberland,* 6 Maine, 21; *Deane* v. *Coffin,* 17 Maine, 52.

Nor can he recover on the count, *quantum meruit,* for his services were rendered under a specific contract, and failing to perform that, there can be no implied promise to pay what his services are worth.

The plaintiff is not entitled to recover any thing on the "Job White" and "Blackstone" roads. These roads were

duly accepted by the authorities of the town, without any fraud on their part.

But if the plaintiff's case may go on without the approval of the commissioners, he ought not to recover for the year 1853, on the evidence before the Court, because he utterly failed to keep the roads in repair, and there were indictments upon them, and he laid out but little during that year. The fact that his contract was not fulfilled for that year, does not depend at all upon the non-approval of the commissioners.

In case of a failure to fulfil on the part of plaintiff, a fair interpretation of the contract gives the commissioners the right to withhold payment, sue the bond, or put an end to the contract, as they should judge most desirable. They chose to stop the supplies, as best for the town and most likely to bring the contractor to terms and compel him to fulfil.

And now, because in the year after he repaired the highways under an indictment, he claims for the time in which it was not done, a claim which is manifestly against law, as it is certainly against equity and fair dealing.

*Palmer*, for plaintiff.

1. The necessary steps were taken by the town in choosing their commissioners, and the contract was valid.

2. The contract was by parol, but is recited in the bond.

3. In the construction of this contract, the new roads were to be made with reasonable perfection as to convenience and durability. The "White and Blackstone" roads were not so made, and plaintiff, for repairs of them, should receive a fair compensation outside of the contract.

The contract was a continuing one unless determined as provided, and the stipulation of the quarterly payments was an independent one, and defendants were bound to pay it even if plaintiff failed in a strict performance in making the road safe and convenient, unless defendants determined the contract in the mode provided. Plaintiff was not bound to indemnify at all events. Defendants could rely upon his

bond. · The commissioners' certificate was required only to inform the authorities that the contract was still in force and undetermined.

As well might defendants refuse to pay at the end of a quarter, because a suit was pending against the town, on the ground that plaintiff had not indemnified them. The answer is, they must rely upon the bond. *Lord* v. *Belknap,* 1 Cush. 282; *Knight* v. *New England Worsted Co.* 2 Cush. 286; *Badger* v. *Titcomb,* 15. Pick. 413.

Even if it were not so, and there was a failure as to strict time, the course adopted by defendants *amounted to a waiver.* The indictment and subsequent satisfaction; the payment of the last year, &c. *Snow* v. *Inhabitants of Ware,* 13 Met. 42.

Nor was a corporate vote required to make a legal waiver. Towns are bound by the legal conduct of their constituted authorities, affecting the mode in which contracts · may be performed for their benefit. *Freetown* v. *County Commissioners,* 9 Pick. 46; *Drury* v. *Worcester,* 21 Pick. 50. Most certainly a jury would be authorized to infer a waiver from all the circumstances, if one was at all necessary to plaintiff's case. But it is not.

But plaintiff claims and proves that *he did fulfil his contract.* And it is for the commissioners to account, if they can, for their own conduct, upon some hypothesis of honesty and fair dealing. Perhaps, charity may possibly excuse them on the ground of misapprehension of their duty.

It is incontestable, that the ground of their complaint was not that the roads were not " safe and convenient," in view of the legal construction of that phrase given in *Church* v. *Cherryfield,* 33 Maine, 460.

The commissioners seem to have got the idea that they were the umpire to say exactly how the roads should be made, with reference to the time they should last and the expense that plaintiff should put upon them. The *contract* says no such thing. He was to perform the duty imposed upon the town, and gave a *bond* to save the town harmless

and to perform the contract; that is, "keep the ways in repair according to the true intent and meaning of the law," &c. binding the town.

RICE, J.—Section 82 of c. 25, R. S., provides, that any town, at its annual meeting, may, if they see cause, elect by ballot, one or more road commissioners, not exceeding five, in lieu of surveyors of highways.

By § 83, such commissioners, except as hereinafter provided, shall have all the rights and powers, conferred upon, and be subject to the duties enjoined upon the surveyors of highways in this chapter. And by § 77, of the same chapter, every town may authorize their surveyors, or other persons, to enter into contracts, for making or repairing the highways or town ways within the same.

No illegality is perceived in the manner of electing the commissioners, nor want of authority on their part, to contract with the plaintiff.

The only evidence we have of the terms of the contract, is found in the recitations of the plaintiff's bond, which is in the case. From this it appears, that the plaintiff, at and for the sum of two thousand two hundred and fifty dollars, for each and every year, to be paid in equal quarterly payments of five hundred and sixty-two dollars and fifty cents each, agreed to keep open, repaired, and amended, all the highways, town ways, causeways and bridges, within certain limits in Belfast, for the term of four years from the first day of May, 1849, according to the true intent and meaning of the law, and to the acceptance of the board of commissioners for the time being, and to their satisfaction and approval, and to save and hold harmless said inhabitants, and indemnified from and against all claims of every name and description, for damages and for costs, arising from any defect, obstruction or want of repair of any of the roads or bridges as before described, or for the omission of any duty required or enjoined by law of, or upon surveyors of highways. There was also a stipulation in the contract,

that if the plaintiff should fail to perform his contract to the satisfaction and approval and acceptance of the commissioners it shall be in their power, and at their option, to put an end to said contract, by giving said Allard written notice of such their decision, and allowing him *pro rata* pay as above, to the time of said notice, saving the defendants any rights or remedies which may have accrued under plaintiff's bond.

To secure a performance of the conditions of this contract on his part, the plaintiff executed and delivered to the defendants a bond in the penal sum of five thousand dollars.

The commissioners did not exercise their power to rescind the contract. But the defendants contend that the plaintiff failed to perform its conditions during a portion of the time covered by it, and for this reason they withhold a portion of the money which they have stipulated to pay. The plaintiff, not admitting any failure on his part, contends that he has a right to recover in this action; and in case there has been a failure of performance on his part, that the remedy of the defendants is upon the bond.

Whether this action can be maintained upon the contract will depend upon the question, whether the mutual stipulations therein, are independent, or conditional and dependent. This is often a difficult question to determine.

The rule laid down by Sergeant WILLIAMS, in a note to *Pordge* v. *Cole*, 1 Saund. 320, is perspicuous, and has received general concurrence from judicial writers. "If a day be appointed for payment of money, or a part of it, or for doing any other act, and the day *is* to happen, or *may* happen, before the thing which is the consideration of the money or other act, is to be performed, an action may be brought for the money or for not doing such other act, before performance; for it appears that the party relied upon his remedy, and did not intend to make the performance a condition precedent."

To the same effect is the language of SHAW, C. J., in *Lord*

v. *Belknap*, 1 Cush. 279. " Where time is given for the performance on one side, and payments are to be made by the other within such time, it is certain, that the making of the payments cannot depend upon a full and complete performance." Tested by this rule, the rights of the parties under this contract, are very clear. The plaintiff stipulated not only to keep the ways in Belfast open, repaired and amended, during a period of four years, but also to save the town harmless from damages and costs, arising from any omission or neglect on his part, for an indefinite period of time, while the defendants stipluated to pay him a given amount of money each year in fixed quarterly payments. There is no provision in this contract making these quarterly payments depend upon performance on the part of the plaintiff. Nor indeed could there have been, because his duties did not all arise, and his liabilities might not accrue, until long after payments stipulated in the contract became due. The stipulations, are therefore, obviously independent.

There is no provision either in the contract or bond for withholding the quarterly payments while the contract was in force. On the other hand it is expressly provided, " that if the said Allard shall at any time fail to perform his aforesaid contract, to the satisfaction, approval and acceptance of the commissioners as aforesaid, it shall be in their power and at their option to put an end to said contract by giving said Allard written notice of such their decision, *and allowing him pro rata pay, as above, to the time of such notice.*"

The defendants manifestly intended to rely upon the bond to indemnify themselves for any failure on the part of the plaintiff. If they have sustained loss through any default on his part, their remedy is upon the bond.

The plaintiff's writ also contains a count upon *quantum meruit*, under this count he claims to recover for extraordinary expenses incurred in keeping the " Job White road" and the " Blackstone road" in repair, in consequence of the imperfect manner in which they were originally constructed.

These were new roads, built by contract, and accepted by the selectmen of Belfast. It was the duty of the selectmen to determine whether these roads were properly made; and by their determination the plaintiff is bound, unless it can be shown, that they acted fraudulently, of which there is neither proof nor suggestion.

According to the agreement of the parties a default must be entered for the balance due on the contract, with interest from the time the same became due and payable.